STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
DENNIS MITCHELL (Cal. Bar No. 116039)
Assistant United States Attorney
Deputy Chief, Environmental and Community Safety Crimes Section
HEATHER C. GORMAN (Cal. Bar No. 258920)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2484/0334
    E-mail:   dennis.mitchell@usdoj.gov
              heather.gorman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. CR 17-585-MWF |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT RENAISSANCE AQUATICS, INC. |
| v. | |
| RENAISSANCE AQUATICS, INC., | |
| Defendant. | |

1. This constitutes the plea agreement between defendant RENAISSANCE AQUATICS, INC. ("defendant") and the United States Attorney's Office for the Central District of California, in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

1

a) At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts five and six of the indictment in <u>United States v. Renaissance Aquatics, Inc.</u>, CR No. 17-585-MWF, which charge defendant with knowingly and fraudulently importing merchandise contrary to law, in violation of 18 U.S.C. § 545.

b) Not contest facts agreed to in this agreement.

c) Abide by all agreements regarding sentencing contained in this agreement, and affirmatively recommend to the Court that it impose sentence in accordance with paragraph 12 of this agreement.

d) Appear for all court appearances, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e) Not commit any crimes; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f) Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g) Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

<u>THE USAO'S OBLIGATIONS</u>

3. The USAO agrees to:

a) Not contest facts agreed to in this agreement.

b) Abide by all agreements regarding sentencing contained in this agreement, and affirmatively recommend to the

Court that it impose sentence in accordance with paragraph 12 of this agreement.

c)   At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the sentence to be imposed.

## CORPORATE AUTHORIZATION

4.   Defendant represents that it is authorized to enter into this agreement.  On or before the change of plea hearing pursuant to this agreement, defendant shall provide the USAO and file with the Court a notarized legal document(s) certifying that defendant is authorized to enter into and comply with all of the provisions of this agreement.  Such legal document(s) shall designate a company representative who is authorized to take the actions specified in this agreement, and shall also state that all legal formalities for such authorizations have been observed.

## ORGANIZATIONAL CHANGES AND APPLICABILITY

5.   This agreement shall bind defendant, its successor entities (if any), parent companies, and any other person or entity that assumes the liabilities contained herein ("successors-in-interest").  Defendant, or its successors-in-interest, if applicable, shall provide the USAO and the United States Probation and Pretrial Services Office with reasonably prompt notice of any name change, business reorganization, sale or purchase of assets, divestiture of assets, or similar action impacting their ability to pay the fine or affecting this agreement.  No change in name, change in corporate or individual control, business reorganization, change

in ownership, merger, change of legal status, sale or purchase of assets, or similar action shall alter defendant's responsibilities under this agreement. Defendant shall not engage in any action to seek to avoid the obligations and conditions set forth in this agreement.

## NATURE OF THE OFFENSE

6. Defendant understands that for defendant to be guilty of the crime charged in counts five and six, that is, knowingly and fraudulently importing merchandise contrary to law, in violation of 18 U.S.C. § 545, the following must be true: defendant knowingly or fraudulently imported merchandise contrary to 16 U.S.C. §§ 1538(c)(1), 1540(b)(1), 50 C.F.R. §§ 23.13, 23.20, and 14.61.

## PENALTIES

7. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 545, is: a five-year term of probation; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $400.

8. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: a five-year term of probation; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $800.

## SUSPENSION, REVOCATION, AND DEBARMENT

9. Defendant understands that if defendant holds any regulatory licenses or permits, the conviction in this case may result in the suspension or revocation of those licenses and permits. The USAO makes no representation or promise concerning

suspension or debarment of defendant from contracting with the United States or with any office, agency, or department thereof. Suspension and debarment of organizations convicted under various federal environmental protection and criminal statutes is a discretionary administrative action solely within the authority of the federal contracting agencies. Defendant understands that unanticipated collateral consequences such as this will not serve as grounds to withdraw defendant's guilty pleas.

## FACTUAL BASIS

10. Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that the statement of facts is sufficient to support the pleas of guilty to the charges described in this agreement as well as the sentence, conditions of probation, and fine specified in this agreement, but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning on an unknown date and continuing until at least March 13, 2013, defendant Renaissance Aquatics, Inc. ("defendant" or "defendant Renaissance") operated as a retailer of live marine specimens, located in Inglewood, California. Beginning no later than 2007 and lasting until at least March 10, 2013, defendant Renaissance acted as an agent for co-defendant Lim Aqua-Nautic Specialist, Inc. ("co-defendant Aqua-Nautic"). Defendant Renaissance's business involved importing marine life from foreign suppliers, then selling and shipping marine life within and outside the United States.

Employees of defendant Renaissance placed orders with foreign suppliers to purchase various live saltwater species, including live corals. Co-defendant Aqua-Nautic provided defendant Renaissance with funds to pay for the orders. When the wildlife orders arrived at Los Angeles International Airport ("LAX"), employees of defendant Renaissance and/or co-defendant Aqua-Nautic would pick up the orders and take the orders to co-defendant Aqua-Nautic's warehouse. At the warehouse, employees of defendant Renaissance and/or co-defendant Aqua-Nautic would unpack, condition, and store the marine life at defendant Aqua-Nautic. Defendant Renaissance and co-defendant Aqua-Nautic subsequently sold the marine life.

Co-conspirator D.T.H., located in Vietnam, was one of the foreign suppliers used by defendant Renaissance. Acting within the scope of its agency and with the intent to benefit co-defendant Aqua-Nautic, defendant Renaissance imported orders from co-conspirator D.T.H. containing, among other things, live stony corals, also referred to as "hard corals," that defendant Renaissance knew were protected under the Convention on International Trade In Endangered Species of Wild Fauna and Flora ("CITES"). In order to lawfully import the live stony corals, defendant Renaissance was required to identify the corals on United States Fish and Wildlife Service ("USFWS") Declaration for Importation or Exportation of Fish or Wildlife (USFWS Form 3-177) and to have the required CITES documentation. However, defendant Renaissance neither declared the live stony corals in the shipments from co-conspirator D.T.H. to the USFWS nor provided the requisite CITES documentation for any shipment containing live stony corals. Instead, defendant Renaissance caused its customs broker to submit

to the USFWS a misleading "Invoice & Packing List" that intentionally omitted the live stony corals and listed inaccurate prices. In addition, the shipments from co-conspirator D.T.H. were packed in a manner to conceal the live stony corals beneath other properly declared wildlife.

For example, on October 7, 2012, defendant Renaissance imported a shipment from co-conspirator D.T.H. containing live marine specimens that defendant Renaissance did not declare to the USFWS on USFWS Form 3-177, as required, including approximately 36 live stony corals listed on Appendix II of CITES belonging to the following genera within the order Scleractinia: *Euphyllia* and *Trachyphyllia*. When the shipment was imported, defendant Renaissance knew that: (1) CITES documentation was required to trade in the CITES-protected corals and that the required CITES documentation had not been obtained; (2) the corals were required to be declared on USFWS Form 3-177, and that the corals had not been so declared; and (3) the corals were packed in the shipment in a manner that concealed the corals from view. After its arrival at LAX, the shipment was loaded onto a truck marked "Aquanautics" and was ultimately unloaded at co-defendant Aqua-Nautic's location. The stony corals were represented on a separate invoice provided by co-conspirator D.T.H. to defendant Renaissance, which identified the stony corals as "HC" (representing hard corals) for a price of $700. Defendant Renaissance subsequently invoiced co-defendant Aqua-Nautic for the imported shipment, including a charge of $700 for the stony corals.

Similarly, on December 28, 2012, defendant Renaissance imported a shipment from co-conspirator D.T.H. containing live marine specimens that defendant Renaissance did not declare to the USFWS on

7

USFWS Form 3-177, as required, including approximately 176 live stony corals listed on Appendix II of CITES belonging to the following genera within the order Scleractinia: *Acanthastrea*, *Cynarina*, *Euphyllia*, *Fungia*, *Lobophyllia*, and *Trachyphyllia*. When the shipment was imported, defendant Renaissance knew that: (1) CITES documentation was required to trade in the CITES-protected corals and that the required CITES documentation had not been obtained; (2) the corals were required to be declared on USFWS Form 3-177, and that the corals had not been so declared; and (3) the corals were packed in the shipment in a manner that concealed the corals from view. The truck that came to pick up the shipment at LAX was marked "Aquanautics." The stony corals were represented on a separate invoice provided by co-conspirator D.T.H. to defendant Renaissance, which identified the stony corals as "HC" (representing hard corals) for a price of $1,148. Defendant Renaissance subsequently invoiced co-defendant Aqua-Nautic for the imported shipment, including a charge of $1,148 for the stony corals.

In addition, on February 3, 2013, defendant Renaissance imported a shipment from co-conspirator D.T.H. containing live marine specimens that defendant Renaissance did not declare to the USFWS on USFWS Form 3-177, as required, including approximately 96 live stony corals listed on Appendix II of CITES belonging to the genus *Euphyllia* within the order Scleractinia. When the shipment was imported, defendant Renaissance knew that: (1) CITES documentation was required to trade in the CITES-protected corals and that the required CITES documentation had not been obtained; (2) the corals were required to be declared on USFWS Form 3-177, and that the corals had not been so declared; and (3) the corals were

8

packed in the shipment in a manner that concealed the corals from view. The stony corals were billed on a separate invoice provided by co-conspirator D.T.H. to defendant Renaissance for a price of $672. Defendant Renaissance subsequently invoiced co-defendant Aqua-Nautic for the imported shipment, including a charge of $672 for the stony corals.

Between May 2012 and March 2013, defendant Renaissance imported at least eight shipments from co-conspirator D.T.H. containing stony corals that were not declared to USFWS and were not accompanied by the required CITES documentation.

## SENTENCING AGREEMENT

11. Defendant and the USAO agree and stipulate that, pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 8C2.1 and 8C2.10, the sentencing guidelines are not applicable in determining the fine for an organization violating statutes relating to wildlife, but that all other sections of Chapter 8 of the U.S.S.G. are applicable in this case, including the provisions regarding probation and restitution. Defendant understands that in determining defendant's sentence, the Court is required to consider the relevant factors under the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a). Defendant agrees that at the time of sentencing the Court may consider any uncharged conduct in determining the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

12. Pursuant to U.S.S.G. §§ 8D1.1 and 8D1.2 and the factors set forth in Title 18, United States Code, Section 3553(a), including the nature and circumstances of the offense and the

9

history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant, the parties agree to recommend that defendant be sentenced as follows:

a) <u>Probation</u>: Defendant shall be sentenced to a five-year term of probation with conditions to be fixed by the Court. Such conditions shall include, but not be limited to, the maintenance of a compliance program that includes, but is not limited to, procedures concerning the importation and exportation of wildlife, training of employees, and annual internal auditing to make sure that defendant complies with the Endangered Species Act, CITES, and the Lacey Act, as well as all other federal, state, and local laws and regulations that apply to defendant's operations. Defendant will also provide the USAO with a copy of its annual internal audit report of its compliance program within two weeks of its issuance.

b) <u>Criminal Fine</u>: Defendant shall pay a criminal fine of $50,000 as follows: payment of the sum of $25,000 within two weeks of the date that sentence is imposed, and payment of the remaining $25,000 within 90 days of the date that sentence is imposed. Confirmation of each of the two payments shall be filed by defendant with the Court. The criminal fine shall be made payable to the Lacey Act Reward Account and sent to the U.S. Fish and Wildlife Service, Cost Account Section, P.O. Box 272065, Denver, Colorado, 80227-9060, or to such other address for the USFWS as provided by the USAO.

   c) <u>Special Assessment</u>: Defendant shall pay a total special assessment of $800.

## WAIVER OF CONSTITUTIONAL RIGHTS

13. Defendant understands that by pleading guilty, defendant gives up the following rights:

   a) The right to persist in a plea of not guilty.

   b) The right to a speedy and public trial by jury.

   c) The right to be represented by counsel at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel at every other stage of the proceeding.

   d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

   e) The right to confront and cross-examine witnesses against defendant.

   f) The right to testify and to present evidence in opposition to the charge, including the right to compel the attendance of witnesses to testify.

   g) Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

14. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offenses to which defendant is pleading guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

15.  Defendant agrees that, provided the Court imposes a term of probation at or below the statutory maximum and/or imposes a fine at or below the statutory maximum, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of probation imposed by the Court, provided it is within the statutory maximum; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; and (e) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; and the condition set forth in paragraph 12(a) relating to a compliance program.

16.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above, (b) the Court imposes a term of probation of no less than five years, and (c) the Court imposes a fine of no less than $50,000, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

17.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this agreement was involuntary, then: (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either

dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

18. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

19. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and government counsel, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

20. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

    a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

    b) Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

    c) Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES</u>

21. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing

Case 2:17-cr-00585-MWF Document 103 Filed 07/14/22 Page 15 of 18 Page ID #:439

recommendations or the parties' agreements to facts or sentencing recommendation.

22. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's determination of sentence, and (c) argue on appeal and collateral review that the Court's sentence is not in error, although each party agrees to maintain its view that the sentence referenced in paragraph 12 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

23. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

15

NO ADDITIONAL AGREEMENTS

24. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

25. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

STEPHANIE S. CHRISTENSEN
Acting United States Attorney

/s/ Heather C. Gorman                               July 14, 2022
_____          _____
DENNIS MITCHELL                                     Date
HEATHER C. GORMAN
Assistant United States Attorneys


RENAISSANCE AQUATICS, INC.
Defendant

By: /s/                                              7-13-22
_____          _____
Name: AKKACHAI KIKABHAI                            Date
Title: OWNER
   Its Authorized Representative

                                                    7/13/22
_____          _____
DONALD MARKS                                        Date
Attorney for Defendant
RENAISSANCE AQUATICS, INC.

//

//

//

16

CERTIFICATION OF DEFENDANT

I have been authorized by defendant RENAISSANCE AQUATICS, INC. ("defendant") to enter into this agreement on behalf of defendant. I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with defendant's attorney. I understand the terms of this agreement, and I voluntarily agree to those terms on behalf of defendant. I have discussed the evidence with defendant's attorney, and defendant's attorney has advised me of defendant's rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me or to defendant other than those contained in this agreement. No one has threatened or forced me or defendant in any way to enter into this agreement. I am satisfied with the representation of defendant's attorney in this matter, and I am pleading guilty on behalf of defendant because defendant is guilty of the charge and wishes to take advantage of the promises set forth in this agreement, and not for any other reason.

RENAISSANCE AQUATICS, INC.
Defendant

By: [signature]   7-13-2022
Name: AKKACHAI KIKABHAI   Date
Title: OWNER
    Its Authorized Representative

17

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am defendant RENAISSANCE AQUATICS, INC.'s attorney. I have carefully and thoroughly discussed every part of this agreement with the authorized representative of my client. Further, I have fully advised my client and its authorized representative of its rights, of possible motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____     7/13/22
DONALD MARKS                          Date
Attorney for Defendant
RENAISSANCE AQUATICS, INC.